**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11060

_____

RICKY J. JOHNSON,

                                                        *Plaintiff-Appellant,*

*versus*

DR SHARON LEWIS,
    Medical Director of GDC, et al.,

                                                        *Defendants,*

DR KEVIN MARLER,

                                                        *Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:16-cv-00453-TES-MSH

_____

2                    Opinion of the Court                24-11060

Before BRANCH, LUCK, Circuit Judges, and MORENO,[*] District Judge.

MORENO, District Judge:

Ricky Johnson is an inmate in the custody and care of the Georgia Department of Corrections. Johnson was diagnosed with Hepatitis C in 2009, but did not receive medication for it until nine years later. By then, Johnson's Hepatitis C had progressed to stage F4 cirrhosis with indications of severe liver inflammation. Johnson sued numerous prison doctors alleging that they were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The district court granted summary judgment in favor of the doctors and dismissed all claims against them. Johnson appealed both the district court's grant of summary judgment and its denial of his motion to amend the complaint. This Court reversed the district court's grant of summary judgment and remanded for trial.[1] The case proceeded to trial against the other defendant medical doctors and resulted in a jury verdict in Johnson's favor.[2] However, prior to trial, the district court granted judgment on the pleadings in favor of Dr. Marler and dismissed him from the case on the basis that Johnson failed to exhaust his administrative

---

[*] The Honorable Federico A. Moreno, United States District Judge for the Southern District of Florida, sitting by designation.

[1] *Johnson v. Lewis*, 83 F.4th 1319 (11th Cir. 2023).

[2] Jury Verdict, *Johnson v. Lewis*, 16-00453 (M.D. Ga. Mar. 6, 2024).

remedies under the Prison Litigation Reform Act. This appeal followed.

We find that the district court did not abuse its discretion in permitting Dr. Marler to file a motion for judgment on the pleadings, and we affirm the district court's holding that Johnson failed to exhaust his administrative remedies.

## I.    BACKGROUND

### A.  Factual History

The underlying lawsuit was previously appealed to this Court. *Johnson v. Lewis*, 83 F.4th 1319 (11th Cir. 2023), provides a thorough review of the many factual disputes in this case. We borrow from that opinion any overlapping material. First, we provide some background on Hepatitis C ("HCV") and the Georgia Department of Corrections ("GDC") policy for treating it.

Hepatitis C is a bloodborne virus that affects one's liver. It can cause liver scarring and "fibrosis." The most extreme form of liver damage from Hepatitis C is called "cirrhosis" and it can have fatal effects. Hepatitis C may take a long time to progress but irrespective of the rate, it can only be cured with medication.

> The GDC has a policy for treating patients with HCV, which has and continues to evolve as new treatments and medicines become available. Because the relevant time period in this case spans from 2012-2018, two GDC policies are at issue: the 2012 policy and the 2016 policy. The 2012 policy provided for the administration of a triple-drug treatment when patients met

certain criteria, including a liver biopsy showing stage 2 fibrosis and grade 2 inflammation. The policy also provided for exceptions, stating that it was

> not intended to be a substitute for professional judgment by the managing physician, [gastrointestinal], or [infectious disease] consultant. Treatment is always to be individualized base[d] on any unique patient factors.

In other words, patients who did not meet the testing criteria could still qualify for treatment if approved by the managing physician or other professionals overseeing the patient's care.

In August 2016, the GDC updated its policy to account for the availability of newer, more effective treatments than the triple-drug regimen. The 2016 policy differed from the 2012 policy in a few relevant ways. First, it recognized a new class of HCV antiviral drugs. Second, it required the administration of a FibroSure test instead of a liver biopsy as part of a patient's treatment eligibility determination. Finally, it created three priority levels for treatment, with medication generally reserved for Priority 1 patients as determined by their FibroSure results.

*Johnson v. Lewis*, 83 F.4th 1319, 1329 (11th Cir. 2023).

Appellant Ricky Johnson is an inmate in the custody and care of the Georgia Department of Corrections. He was diagnosed with

Hepatitis C in 2009. On November 1, 2012, Dr. Chaudhary—who is not a party to this appeal—prescribed the triple-drug therapy as treatment for his Hepatitis C. He recommended that same treatment for Johnson on April 25, 2013. At that time, Johnson and Dr. Chaudhary agreed that Johnson would not begin treatment until Johnson returned to Ware State Prison after a temporary relocation. Johnson returned in August 2013, but no treatment followed.

On May 9, 2014, while incarcerated at Ware State Prison, a state-run prison within the GDC, Johnson filed a grievance stating:

> I was approved for medical treatment for Hepatitis C. Medical staff refuses to begin treatment . . . . I submit that medical staff is being deliberately indifferent to a serious medical need in violation of my 8th Amendment right against cruel & unusual punishment. I would like my treatment to begin immediately.

Ricky Johnson Grievance No. 173073, Ware State Prison, J.A. 1-1. But, on July 31, 2014, Dr. Chaudhary withdrew the prescription for triple-drug therapy and recommended continued monitoring, as well as a repeat liver biopsy to take place in July 2015. The Ware State Prison grievance was denied and Johnson appealed to the Office of Health Services Management in the GDC. The Department denied the appeal on October 6, 2014.

On May 21, 2015, Johnson was transferred to Jenkins Correctional Facility, a private prison within the GDC. Appellee, Dr. Kevin Marler, was the medical director and physician at Jenkins

Correctional Facility. Johnson saw Dr. Marler for the first time in July 2015.

At that time, Dr. Marler reviewed lab work and records for Johnson, and conducted a physical exam. Dr. Marler notified Johnson that he would be placed in the chronic clinic, but would not receive drug therapy. According to Johnson, Dr. Marler told him he would consult with GDC doctors about the treatment, but Johnson never heard back. Johnson never received the liver biopsy that Dr. Chaudhary recommended to take place by July 2015. Johnson did have blood work done in July 2016, which Dr. Marler noted "did not indicate a level of liver involvement then requiring treatment."

In April 2017, Dr. Lewis—who is not a party to this appeal—reminded Dr. Marler that the GDC had updated its policy, in August 2016, to require a FibroSure test as protocol for Hepatitis C. In June 2017, Dr. Marler administered the test which indicated that Johnson had liver cirrhosis and severe inflammation. On July 16, Dr. Marler ordered an abdominal ultrasound to determine whether the Fibro-Sure test results were an accurate reflection of the severity of Johnson's Hepatitis C. On November 2, 2017, Johnson was transferred from Jenkins Correctional Facility to a different prison and was no longer in Dr. Marler's care.

## B.  *Procedural History*

Appellant Johnson filed the underlying lawsuit on October 12, 2016, against various prison doctors, including Appellee Dr.

Marler. After years of pre-trial discovery, the district court set a final dispositive motions deadline for July 31, 2019. Dr. Marler filed a timely motion for summary judgment on numerous grounds. In that motion, Dr. Marler argued that Johnson failed to exhaust his administrative remedies. The district court adopted the recommendation of the magistrate judge and denied Dr. Marler's motion for summary judgment on this point because the record was incomplete on the matter and Dr. Marler bore the burden of proving Johnson's failure to exhaust. However, the court granted Dr. Marler's motion for summary judgment on all other grounds and dismissed the case.

Johnson appealed on the basis that a reasonable jury could find each of the defendants—including Dr. Marler—had been deliberately indifferent to his medical diagnosis and consequently violated his Eighth Amendment rights. This Court concluded that there were genuine disputes of material fact as to whether the doctors were deliberately indifferent to Johnson's serious medical needs and reversed the district court's ruling. *Johnson v. Lewis*, 83 F.4th at 1328. The case was remanded to the district court.

On remand, a jury trial was set to begin on March 4, 2024. Approximately three months before trial, Dr. Marler filed an expedited motion for leave to file a dispositive motion on the exhaustion issue. Johnson opposed the motion arguing lack of good cause, forfeiture, and futility. Dr. Marler argued that the motion was permissible under Rule 12(c), that good cause existed because the exhaustion issue is a matter of abatement, and the issue had not been

forfeited because it was raised in his initial motion for summary judgment.

The district court held a telephonic hearing on January 23, 2024. Immediately following the hearing, the court granted Dr. Marler's motion as permitted under Federal Rule of Civil Procedure 12(c). To ensure the motion did not delay trial, the district court instructed Dr. Marler to file the motion the following day. One day later, Dr. Marler filed a Rule 12(c) motion for judgment on the pleadings based on the exhaustion defense. Johnson filed a response on February 14, 2024. On February 23, 2024, the district court granted Dr. Marler's Motion for Judgment on the Pleadings, finding that Johnson failed to exhaust his administrative remedies as to Dr. Marler. In so doing, the district court noted that Dr. Marler had been given "ample opportunity" to provide a sufficient record for an exhaustion defense and his tactics were "frustrating to say the least." Nevertheless, the district court determined that the "gracious drafting" of Rule 12(c) "undoubtedly *permitted* his strategic maneuver." Consequently, Dr. Marler was dismissed as a defendant in the case. The two remaining defendant physicians proceeded to a jury trial on the set date of March 4, 2024, concluding with a judgment in favor of Johnson. This appeal followed.

## II.    STANDARDS OF REVIEW

There are two issues that require our review in this case. First, whether the district court erred in holding that Johnson did not exhaust his administrative remedies against Dr. Marler. Sec-

ond, whether the district court erred in granting Dr. Marler's motion for leave to file an out-of-time dispositive motion under Federal Rule of Civil Procedure 12(c).

We review the exhaustion question *de novo* and defer to the district court's factual findings unless there is evidence of clear error. *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015). Clear error is present if after reviewing all the evidence, we are "left with the definite and firm conviction that a mistake has been committed." *Bryant v. Rich*, 530 F.3d 1368, 1377 (11th Cir. 2008) (quotation omitted).

District courts have broad discretion to manage their cases, to control the dockets and scheduling orders. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); *Clinton v. Jones*, 520 U.S. 681 (1997). A decision to grant an out-of-time motion is evaluated under the same standard as a modification of a pre-trial scheduling order, which we review for abuse of discretion. *Santiago v. Lykes Bros. S.S. Co.*, 986 F.2d 423, 427 (11th Cir. 1993). "An abuse of discretion occurs when a district court commits a clear error of judgment, fails to follow the proper legal standard or process for making a determination, or relies on clearly erroneous findings of fact." *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 846 F.3d 1159, 1163 (11th Cir. 2017). Even if we find that the district court abused its discretion, we defer to the district court's decision so long as the error was harmless. *Goldsmith v. Bagby Elevator Co.,* 513 F.3d 1261, 1276 (11th Cir. 2008). "[T]he standard for harmless error is whether the complaining party's substantive rights were affected." *Id.*

## III.    ANALYSIS

The Prison Litigation Reform Act ("the Act") requires prisoners to exhaust all administrative remedies prior to suing in federal court challenging prison conditions. 42 U.S.C. § 1997e(a). The exhaustion provision of the Act states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The defendant bears the burden of proving that the plaintiff has failed to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

The purpose of the exhaustion requirement is to "eliminate unwarranted federal-court interference with the administration of prisons" by putting prison officials on notice that there is a problem and giving them "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1322 (11th Cir. 2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). The requirement is designed "to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones*, 549 U.S. at 219. Further, "[a] prisoner need not name any particular defendant in a grievance in order to properly exhaust his claim." *Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218–19 (11th Cir. 2010). The Act "requires that a prisoner provide as much relevant information as

he reasonably can in the administrative grievance process, [but] it does not require that he do more than that." *Brown v. Sikes,* 212 F.3d 1205, 1207 (11th Cir. 2000).

To properly exhaust administrative remedies under the Act, a prisoner must comply with the prison's grievance procedures at his prison. *Jones*, 549 U.S. at 218. The GDC's standard operating procedures apply to "[a]ll offenders committed to the Department of Corrections in state prisons [and] private prisons." Ga. Dep't of Corr., Standard Operating Procedures, Statewide Grievance Procedure, J.A. 240-4, at 1, Dec. 10, 2012. Therefore, Johnson was subject to the same grievance procedures while he was at Ware State Prison and Jenkins.

The GDC grievance procedures require the prisoner to (1) file an original grievance, and (2) appeal to central office. *Id.* at 7. Prisoners are limited to two active grievances at once, with some exceptions. *Id.* at 6. The grievance complaint must be "a single issue/incident" and must be filed "no later than 10 calendar days from the date the offender knew, or should have known of the facts giving rise to the grievance." *Id.* at 7. The prisoner has "7 calendar days from the date he/she receives the response to the Original Grievance (including a rejection as untimely) to file a Central Office Appeal." *Id.* at 11. "Where a Grievance is filed in reference to a different facility, the Grievance Coordinator at the offender's current facility will retain a copy of the Grievance and will forward the Original Grievance to the Grievance Coordinator at the named facility for processing." *Id.* at 13-14. The Grievance Form instructs

inmates that they "must include specific information concerning [their] grievance to include dates, names of persons involved, and witnesses." *Id.* at Attach. 1.

### A.

First, we address whether Johnson exhausted all administrative remedies available against Dr. Marler. Johnson asks this Court to reverse the district court's ruling that he did not satisfy the exhaustion requirement. He argues that the grievance he filed and appealed while at Ware State Prison satisfied the exhaustion requirement for this case against Dr. Marler. Because we conclude that Johnson's claims against Dr. Marler do not concern the exact same issue as his initial grievance, we affirm the district court's holding that Johnson failed to exhaust his administrative remedies.

In *Parzyck*, this Court considered whether a Florida prisoner exhausted his administrative remedies against a prison doctor, Dr. Cherry.  627 F.3d at 1217. To exhaust administrative remedies, the Florida Department of Corrections' grievance procedures required the inmate to file a formal grievance with the warden at the prison and to submit an appeal to the Office of the Secretary of the Florida Department of Corrections. *Id.* at 1218. The inmate filed a formal grievance in November 2006 complaining that he was denied consultations with an orthopedic specialist as recommended by prison medical staff to treat his severe back pain. *Id.* His formal grievance was rejected, and he appealed to the Office of the Secretary. *Id.* The

Secretary denied his appeal in March 2007. *Id.* It was at that moment that this Court indicated the inmate had exhausted his administrative remedies. *Id.* at 1219.

In January 2007, while Parzyck's appeal to the Office of the Secretary was pending, Dr. Cherry was appointed as the Chief Health Officer at the prison. *Id.* at 1218. The district court concluded that because the grievance only addressed acts and omissions that occurred prior to Dr. Cherry's appointment, Dr. Cherry could not be held liable, therefore, the inmate had not exhausted administrative remedies as to any claim against Dr. Cherry. But on appeal, this Court held that the district court erred on the exhaustion point by "confus[ing] the question of Dr. Cherry's liability on the merits of the claim with the separate and distinct question of whether [the inmate] exhausted his administrative remedies." *Id.*

Ultimately, the *Parzyck* Court held that the inmate's grievance sufficiently exhausted administrative remedies even though it did not name Dr. Cherry because it had accomplished the Act's purpose by alerting prison officials to the problem—denial of an orthopedic consult—and giving them the opportunity to resolve it before being sued. *Id.* at 1219. The grievance procedures did not require inmates to "file new grievances addressing every subsequent act by a prison official that contributes to the continuation of a problem already raised in an earlier grievance." *Id.* Therefore, the inmate "was not required to initiate another round of the administrative grievance process on the exact same issue each time another request for an orthopedic consultation was denied." *Id.*; *see also*

*Johnson v. Johnson*, 385 F.3d 503, 521 (5th Cir. 2004) ("[P]risoners need not continue to file grievances about the same issue."), *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013) ("[P]risoners need not file multiple, successive grievances raising the same issue"), *Howard v. Waide*, 534 F.3d 1227, 1244 (10th Cir. 2008) (explaining that an inmate did not need to raise "redundant" grievances to satisfy the exhaustion requirement).

Determining whether the exhaustion requirement has been fulfilled requires us to decide whether the issue raised in this lawsuit is the "exact same issue" as the one previously grieved by the inmate. *Parzyck*, 627 F.3d at 1219. In other words, we must decide if the issue in this case constitutes "the continuation of a problem already raised in an earlier grievance." *Id.* If so, then the prison officials were given an "time and opportunity" to resolve the issue prior to this suit, which is exactly what the exhaustion requirement is intended to do. *Woodford*, 548 U.S. at 93. In comparing Johnson's grievance at Ware State Prison to his claims against Dr. Marler, we find that the grievance did not concern the same issue as this suit.

In accordance with the GDC's grievance procedures, Johnson filed an administrative grievance in May 2014 at Ware State Prison requesting approved medical treatment for his Hepatitis C to begin. Context clarifies that he specifically grieved about the triple-drug therapy treatment that Dr. Chaudhary had prescribed in November 2012 and recommended again in April 2013. But Dr. Chaudhary decided in July 2014 that the triple-drug therapy was no longer the best course of action, withdrew the prescription for it,

and recommended continued monitoring as well as a repeat liver biopsy take place in July 2015. Thereafter, Johnson was transferred to Jenkins in May 2015 and began seeing Dr. Marler in July 2015.

In this case, Johnson complains about three specific instances of deliberate indifference by Dr. Marler. First, Johnson argues that Dr. Marler ignored Dr. Chaudhary's recommendation for a liver biopsy in July 2015 and substituted it with a FibroSure test that was not conducted until June 2017. *Johnson*, 83 F.4th at 1330. Second, that after receiving the FibroSure results indicating severe progression of Johnson's Hepatitis C—F4 liver cirrhosis—Dr. Marler did nothing. *Id.* Third, that other than scheduling an ultrasound for Johnson which was conducted in August 2017, Dr. Marler failed to treat Johnson's Hepatitis C at all before Johnson was transferred to another facility in November 2017. *Id.* In contrast, Johnson's grievance at Ware State Prison concerned one specific issue: failure to receive triple-drug therapy. Accordingly, Johnson brings before us issues that prison officials never had time or opportunity to resolve prior to being hailed into federal court. This is in stark contrast to the inmate in *Parzyck* who alerted prison officials by complaining about the same issue in both his initial grievance and in the lawsuit.

Johnson asserts that the Ware State Prison grievance alerted prison officials to a more general issue: failure to treat Hepatitis C. Accordingly, he argues that his complaints with respect to Dr. Marler constitute the "exact same issue" as his complaints in his initial grievance. But the Ware State Prison grievance states, "I was

approved for medical treatment for Hepatitis C" and "I would like my treatment to begin." And the only treatment Johnson had previously been approved for was triple-drug therapy. Therefore, the only treatment he could be referring to in the grievance is the triple-drug therapy. Further, as we explained above, Dr. Chaudhary subsequently withdrew Johnson's prescription for triple-drug therapy in July 2014, a year before Johnson met Dr. Marler and two-and-a-half years before he filed this suit. So, failure to provide triple-drug therapy cannot be the issue in this suit.

Johnson's argument regarding a general grievance fails on another ground. The GDC's grievance procedures suggest that a general grievance does not suffice for exhaustion purposes. The grievance procedures state:

> Where a Grievance is filed in reference to a different facility, the Grievance Coordinator at the offender's current facility will retain a copy of the Grievance and will forward the Original Grievance to the Grievance Coordinator at the named facility for processing.

Ga. Dep't of Corr., Standard Operating Procedures, Statewide Grievance Procedure, J.A. 240-4, at 13–14. The inclusion of the term "named" suggests that to successfully grieve about another facility, the inmate must identify that facility by name. The Offender Grievance Form also requires inmates to "include dates, names of persons involved, and witnesses" within reason. *Id.* at Attach. 1. Because Johnson did not know he would later be transferred to Jenkins Correctional Facility and treated by Dr. Marler,

he could not have included that information when he filed his Ware State Prison grievance. Therefore, it was impossible for him to grieve about anything that happened at Jenkins Correctional Facility in his Ware State Prison grievance. Basic logic confirms that it is impossible to grieve about an issue, doctor, or facility that you have yet to encounter.

Johnson cites no precedent that supports concluding that a general grievance can put prison officials on notice *ad infinitum*. To hold as much would belie the purpose of the exhaustion requirement. One general medical grievance cannot afford prison officials a meaningful opportunity to resolve a myriad of issues. To hold otherwise would increase rather than eliminate unwarranted federal court interference with the administration of prisons. The case before us provides a clear example. One grievance concerning treatment for Hepatitis C cannot satisfy the exhaustion requirement against all future doctors, at all future facilities, for all treatments related to Johnson's Hepatitis C.

We hold that Johnson's claims against Dr. Marler do not concern the "exact same issue" as the Ware State Prison grievance and therefore failed to alert prison officials to the issues alleged against Dr. Marler. Johnson's complaints against Dr. Marler were not merely a "continuation of a problem already raised in an earlier grievance." In turn, Johnson was required to file a new grievance alerting prison officials to the specific alleged deliberate indiffer-

ence at issue here. Accordingly, we affirm the district court's holding that Johnson's grievance at Ware State Prison did not exhaust his administrative remedies as to Dr. Marler.

### B.

Next, we turn to the district court's decision to grant Dr. Marler's motion for leave to file a dispositive motion after the deadline for dispositive motions had already passed. Johnson argues that the district court abused its discretion by allowing Dr. Marler to file a motion for judgment on the pleadings four-and-a-half years after the deadline and three months before trial. We disagree and affirm the district court's decision.

Dr. Marler initially raised an exhaustion defense in a timely-filed motion for summary judgment in July 2019. The district court denied the motion and did not rule on exhaustion because the record was incomplete as to that issue. In late December 2023, three months before trial, Dr. Marler asked the court for permission to file an out-of-time dispositive motion regarding his exhaustion defense. The district court granted Dr. Marler leave to file. He filed a Rule 12(c) motion for judgment on the pleadings, and the district court granted it. In so doing, the district court noted that Dr. Marler had been given "ample opportunity" to provide a sufficient record for an exhaustion defense and his tactics were "frustrating to say the least." *Johnson v. Lewis*, No. 16-00453, Slip Op. 2-3 (M.D. Ga. Feb. 23, 2024). Nevertheless, the district court determined that the "gracious drafting" of Rule 12(c) "undoubtedly permitted his strategic maneuver." *Id.*

Johnson argues the district court abused its discretion because it erroneously believed it was required to permit the out-of-time motion under Rule 12(c). To support his position, Johnson points us to the district court's comments during the telephonic hearing:

> I think Rule 12(c) gives them the chance to do this. . . I'm not happy about it. I don't think that Dr. Marler was as diligent as he should have been in responding, et cetera, but I think Rule 12(c) does not preclude another motion. I feel I'm hamstrung by the rules there on that. . . So I think the rules bind me up as far as 12(c).

Tel. Conf. Hr'g Tr., J.A. 293 at 32:1-12, Jan. 23, 2024. Johnson also argues that the district court's express finding that Dr. Marler "had not been as diligent as he could have been" is sufficient to vacate the ruling for lack of good cause as is required under Rule 16(b)(4). *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418–19 (11th Cir. 1998)(holding that good cause requires the diligence of the party seeking the extension).

On the other hand, Dr. Marler argues that this Court should not rely on offhand comments made during a teleconference to conclude the district court misunderstood the law. But rather, Dr. Marler urges this Court to find that the district court exercised its discretion because it considered briefing and oral argument before granting leave to file. Further, Dr. Marler maintains that there was

good cause to modify the scheduling order under Rule 16(b)(4) because the exhaustion issue was raised in his original motion for summary judgment but left unresolved. As a matter of abatement, the exhaustion issue needed to be resolved before proceeding to a jury trial. *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F. 4th 1224, 1227 (11th Cir. 2023) (explaining that exhaustion under the Act is "a precondition to an adjudication on the merits").

Federal Rule of Civil Procedure 12(c) says that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." But Federal Rule of Civil Procedure 16(b)(4) says that a scheduling order can only be modified for "good cause." This Court's reasoning in *Sosa* clarifies that a party seeking to file an out-of-time motion must not only show that the motion will not delay trial as is required by Rule 12(c), but also that there is good cause under Rule 16(b)(4). *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417 (11th Cir. 1998). We address each requirement in turn.

In this case, permitting an out-of-time dispositive motion amounted to a modification of the scheduling order subject to Rule 16(b)(4)'s good-cause requirement because the deadline for dispositive motions had passed. Dr. Marler, the party seeking to file an out-of-time motion, presented the district court with arguments establishing good cause. The district court granted Dr. Marler leave to file. But it did so without finding good cause. That failure constitutes a procedural error.

However, we will not disrupt the district court's ruling because while there was error, it was harmless. *Goldsmith*, 513 F.3d at 1276. Although the district court failed to acknowledge it, Dr. Marler had established good cause. Good cause existed because the exhaustion issue is a matter of abatement that must be resolved before a prisoner's case can proceed to trial. *Sims v. Sec'y, Fla. Dep't of Corr.*, 75 F.4th 1224, 1227-30 (11th Cir. 2023); *Bryant v. Rich*, 530 F.3d 1368, 1374-77 (11th Cir. 2008) (holding the exhaustion inquiry is reserved for the court, not the jury). Therefore, the district court should have made a good cause finding, but its failure to do so did not have a substantive effect on the case.

The dissent concludes that the district court found Dr. Marler lacked diligence and therefore *Sosa* precludes a good cause finding. We disagree. Acknowledging this Court's holding in *Sosa*, we find the district court here made no conclusive finding as to diligence such that a good cause was foreclosed. 133 F.3d at 1418. Here, the district court made several comments during the telephonic hearing expressing his frustration with Dr. Marler's actions throughout the course of the litigation. The district court noted that Dr. Marler had plenty of time to make a clear record on the exhaustion issue but failed to do so in a timely manner. Indeed, the district court remarked that Dr. Marler was "not as diligent as he should have been." Tel. Conf. Hr'g Tr., J.A. 293 at 32:1-12, Jan. 23, 2024.

Even so, in the absence of an order from the district court addressing the matter, we decline to assume the court's passing

comments amount to a conclusive finding that Dr. Marler lacked diligence. The dissent elevates a passing remark into a dispositive finding. The district court never made a finding on diligence nor held that Dr. Marler failed to establish good cause. Rather, it expressed dissatisfaction with Dr. Marler's conduct before exercising its discretion to allow him to file the motion. That distinction is significant. Judicial observations or admonishments during a hearing are a commonplace feature of a district court's case management and do not, without more, constitute a formal finding.

Further, the district court did not mention diligence in its order permitting Dr. Marler to file an out-of-time motion. And, in its order granting his motion for judgment on the pleadings the district court noted that Dr. Marler's tactics were "frustrating to say the least," but that is the only finding related to diligence. As such, we do not consider it a conclusive finding that Dr. Marler lacked diligence. Because the district court granted leave to file the motion notwithstanding its criticism, we conclude that the better reading of the record is that the court viewed Dr. Marler's diligence as imperfect, but not so deficient as to foreclose a good cause finding.

That reading is reinforced by the nature of the motion itself. As discussed above, the motion concerned a prerequisite matter that needed to be resolved ahead of trial. Thus, the court's decision is entirely consistent with a determination that the issue warranted resolution despite the court's frustration with Dr. Marler. The district court's authorization for Dr. Marler to file the motion on a threshold inquiry demonstrates that its comment was admonitory

rather than dispositive. Accordingly, we find that a good cause finding was not foreclosed and that any error in failing to make a good cause finding was harmless.

Next, the district court explicitly indicated that permitting the Rule 12(c) motion would not delay trial and ordered it to be filed the very next day to ensure as much. The district court considered the parties' briefs and held a telephonic hearing to determine whether to permit the out-of-time motion. There is nothing in the court's order granting Dr. Marler's motion for leave to file or the court's order granting Dr. Marler's motion for judgment on the pleadings that suggests the court failed to exercise its discretion or relied on an erroneous interpretation of law. Further, the exhaustion issue had not been addressed and could not be resolved by the jury. By granting leave to file, the district court was able to address the matter expeditiously without delaying trial. A decision that is squarely within the discretion of the district court.

Accordingly, we hold that the district court did not abuse its discretion in granting Dr. Marler's motion for leave to file a Rule 12(c) motion.

Even if the district court had abused its discretion, we will not disrupt its ruling because the error was harmless. *Goldsmith*, 513 F.3d at 1276. With the court's permission, Dr. Marler could have filed a motion for summary judgment under Federal Rule of Civil Procedure 56(b). *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) (explaining that "[t]wo motions for

24                    Opinion of the Court                    24-11060

summary judgment may be ruled upon in the same case" if the district judge finds "good reason" to do so). It is clear, based on the nature of the issue raised and the district court's decision to grant the Rule 12(c) motion, that the district court also would have permitted the motion for summary judgment to resolve the exhaustion issue.[3] Therefore, even if it was error for the district court to grant leave to file a Rule 12(c) motion, the error was harmless because it had no substantive effect on the case.

Lastly, Johnson argues that this Court should not interpret Rule 12(c) to abolish the district court's innate ability to control its own docket with scheduling orders. To do so, he posits, would conflict with Rule 16—which allows modification of scheduling orders "only for good cause and with the judge's consent"—and Rule 6—which requires "excusable neglect" to modify an expired deadline. For support, Johnson relies on the harmonious-reading canon of construction that says, "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." *See* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 180 (2012). He further asserts that this erroneous reading of Rule 12(c) would undermine Rule 1 which requires the courts and the parties to "secure the just, speedy, and inexpensive determination of every action and proceeding.

---

[3] The district court acknowledged this possibility in footnote 3 of its order granting Dr. Marler's motion for judgment on the pleadings. *Johnson v. Lewis*, No. 16-00453, Slip Op. at 7, n.3 (M.D. Ga. Feb. 23, 2024).

Although the Court considers Johnson's statutory interpretation arguments, there is no concern that our reading of Rule 12(c) creates a conflict with any other Federal Rules. Here, both Rule 16(b)(4) and Rule 12(c) are implicated. Rule 16(b)(4) requires good cause. However, Rule 12(c) is permissive. It does not impose a mandatory obligation on district courts. Rather, it permits them to exercise discretion in ruling on motions for judgment on the pleadings and evaluating whether such motions would delay trial. And this decision does not disrupt the district court's discretion to manage its docket.

For the foregoing reasons, we

**AFFIRM.**

24-11060                LUCK, J., Dissenting                1

LUCK, Circuit Judge, dissenting:

There's a lot to like about the majority opinion. It's right that, before allowing a late motion for judgment on the pleadings to be filed after the pretrial order's dispositive-motion deadline, the district court must find both good cause under Federal Rule of Civil Procedure 16(b)(4) and that the motion is filed early enough so as not to delay the trial under rule 12(c).

The majority opinion is right that the district court erred because it allowed Dr. Marler to file his judgment-on-the-pleadings motion without finding good cause under rule 16(b)(4). And the majority opinion is right that, under *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417 (11th Cir. 1998) (per curiam), the good-cause standard cannot be satisfied where the moving party did not act diligently in filing the dispositive motion. *Id.* at 1419; *see also Southern Grouts & Mortars, Inc. v. 3M Co.*, 575 F.3d 1235, 1242 (11th Cir. 2009) ("Southern Grouts lacked diligence, at the very least, because it waited until August 5, 2008 to file a motion to amend its complaint with information that it had known over a month before when it filed a motion for summary judgment."); 6A *Wright & Miller's Federal Practice & Procedure* § 1522.2, at 312 (3d ed. 2010) ("[T]he good-cause standard will not be satisfied if the court concludes that the party seeking relief . . . has not acted diligently in compliance with the schedule." (footnote omitted)).

Our disagreement is narrow. The majority opinion believes the district court did not find that Dr. Marler did not act diligently

in filing his dispositive motion. Because I believe it did, I respect-fully dissent.

Here's what the district court said at the hearing on Dr. Marler's motion for leave to file his dispositive motion after the pretrial-order deadline:

- "[T]ell me why he gets to file a motion? He had a chance; why didn't he take it?"

- "[T]ell me why it is Dr. Marler gets another bite at the apple when it seems to me he had everything at his disposal, all he had to do was turn the documents in?"

- "But those cases, I bet you, did not have a situation where here where we had a guy who had the documents at his disposal, he could have made a clear record, he just didn't. He just didn't."

- The magistrate judge "asked him to submit stuff, he didn't do it. We ruled on it. He never complained about it until now."

- "Dr. Marler should have made this clear about four years ago."

- "I don't think that Dr. Marler was as diligent as he should have been in responding, et cetera, but I think [r]ule 12(c) does not preclude another motion."

And here's what the district court wrote in its order granting Dr. Marler's judgment-on-the-pleadings motion:

- "Even though 'the [c]ourt ha[d] already *afforded [him ample] opportunity* to provide supporting evidence [as to an] exhaustion defense,' [Dr.] Marler—taking advantage of the gracious drafting of the rule—moved for leave to file a [r]ule 12(c) based dispositive motion to take another stab at that defense."

- "After making [Dr.] Marler aware that his tactics were frustrating to say the least, the [c]ourt was adamant that whatever he filed was not going to delay trial. Nevertheless, the [c]ourt determined that the text of [r]ule 12(c) undoubtedly permitted his strategic maneuver."

- "Is it late in the game? Yes. Is it frustrating? No doubt. Is [r]ule 12(c) a permissible avenue for [Dr.] Marler to revive his defense? By its plain text, it has to be."

Read together, the district court found that Dr. Marler was not diligent in filing his exhaustion-based judgment-on-the-pleadings motion. Dr. Marler was not "as diligent as he should have been"; he "had everything at his disposal" and "could have made a clear record" before the deadline, but "he just didn't"; he "should have made" the exhaustion argument "clear about four years ago"; he "had already [been] afforded . . . ample opportunity to provide supporting evidence as to an exhaustion defense"; his "strategic maneuver" and "tactics" in filing the motion four years after the deadline were "frustrating to say the least"; and his motion was filed "late in the game." There's no good cause where the moving party lacks diligence and waits to spring a dispositive motion as a

tactical strategic maneuver.  *See Sosa*, 133 F.3d at 1419; *Southern Grouts*, 575 F.3d at 1242; *Butts v. County of Volusia*, 222 F.3d 891, 892 n.2 (11th Cir. 2000) (good cause cannot be shown where the delay is a result of a "strategic decision" by the moving party); 3 *Moore's Federal Practice* § 16.14[1][b], at 16-79 (3d ed. 2022) ("'Good cause' also typically does not include a change in litigation strategy.").

The majority opinion brushes off these findings as passing comments and remarks made during a hearing.  "Judicial observations or admonishments during a hearing," it explains, "are a commonplace feature of a district court's case management and do not, without more, constitute a formal ruling."  But the majority opinion's brush off misses the mark for four reasons.

First, I know of no constitutional provision, statute, rule, or case that says findings are entitled to less weight because they are made orally.  The majority opinion cites none.  And we regularly affirm oral findings made at a hearing.  *Cf., e.g.*, *United States v. Copeland*, 20 F.3d 412, 415 (11th Cir. 1994) (district court's recorded or transcribed oral findings were sufficient to satisfy due-process requirements); *Prof'l Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 672 (5th Cir. 1975) (affirming oral findings that prevailing party reduced to a written order).  We should not adopt a principle of law that calls for us to disregard what trial judges find unless they put it in writing.  That is asking too much of our colleagues in our busy circuit.

Second, the district court was not in case-management mode when it found that Dr. Marler was not as diligent as he

24-11060                LUCK, J., Dissenting                5

should have been.  The hearing was on Dr. Marler's request for leave to file his late dispositive motion; it was not a case management conference and it was not an effort to move the case along. At the hearing, the district court heard arguments and ruled on Dr. Marler's substantive motion.

Third, the district court incorporated the hearing into its order granting leave to file the late dispositive motion.  It considered the parties' arguments "presented during the [c]ourt's telephone hearing" in allowing Dr. Marler to file his judgment-on-the-pleadings motion.  And the district court referenced the hearing again in its order granting Dr. Marler's motion.  Even if the majority opinion is right that, without more, we should ignore judicial observations at a hearing as simply case management, we have more here. At the very least, if the district court tells us it considered the hearing in granting a substantive motion, we should too when we review the ruling.

Fourth, not surprisingly, the district court's oral findings made their way into the written order.  The district court wrote that it had already afforded Dr. Marler ample opportunity to press his exhaustion defense.  And it wrote that Dr. Marler's late judgment-on-the-pleadings motion was a tactical strategic maneuver that came late in the game.  The majority opinion does not address these written findings.  But together with the hearing, they establish that Dr. Marler was not diligent in bringing his dispositive motion.  That lack of diligence precludes a good-cause finding.

The majority opinion offers one other path to affirm. "Dr. Marler," it explains, "could have filed a motion for summary judgment under Federal Rule of Civil Procedure 56(b)." "[T]he district court also would have permitted the motion for summary judgment to resolve the exhaustion issues," so any error in allowing the motion for judgment on the pleadings "was harmless because it had no substantive effect on the case."

But the majority opinion's harmless-error analysis runs into two problems. First, a summary-judgment motion by Dr. Marler would also be subject to the same dispositive-motion deadline as the motion for judgment on the pleadings. Dr. Marler would still have to meet the good-cause standard in rule 16(b)(4) before the district court could modify the scheduling order to allow for the late and successive summary-judgment motion. Switching the procedural vehicle doesn't change the analysis. It gets us to the same starting line—the good-cause standard under rule 16(b)(4).

Second, Dr. Marler's lack of diligence and strategic decision to wait to file his dispositive motion show there was no good cause to modify the schedule. And without a good-cause finding, he could not have filed a summary-judgment motion past the dispositive-motion deadline. So, the district court's abuse of discretion in allowing Dr. Marler to file his motion for judgment on the pleadings after the deadline without a good cause finding was not harmless. Unfortunately, there is no alternative basis to affirm. We must reverse the judgment for Dr. Marler on the late-filed exhaustion issue.